Case 16-1042 Jane Doe et al. v. Etihad Airways PJSC Oral argument, 15 minutes per side. Mr. Schwartz for the appellants. Good morning, Your Honors. May it please the Court, Mark Kelly Schwartz on behalf of the plaintiffs' appellants Jane Doe and John Doe. With the Court's permission, I'd like to reserve four minutes for my rebuttal. Thank you. In this case under the Montreal Convention, Mrs. Doe's mental damages do not arise from the accident, but rather from the bodily injury she sustained as a result of the needle stick puncture. The District Court's opinion states that defendant argues and the Court agrees that plaintiff's mental distress damages were not caused by her physical injury. This is contrary to the evidence and it's contrary to the facts in this case. I'm interested that you even start out that way and let me tell you why. There are certainly occasions when there could be an accident, a plane crash, and maybe there's a bodily injury and maybe there isn't, so you can separate those two out. But here, I thought your position all along was there weren't two things. The accident was the needle prick. The needle prick was the accident. You started out this morning saying the injuries came out of the needle prick, but not the accident. There aren't two different things here, are there? Correct, Your Honor. Under Article 17, there are three threshold issues. There has to be an accident, as that term is defined in the case law derived from Air France v. Saks and the progeny from that case. There has to be a bodily injury and it has to happen in the course of, in this case, onboard the aircraft. That last threshold question is not at issue, but we have always maintained that. What's your position? Is there a separate accident and bodily injury or are they one and the same? They're separate, Your Honor. The accident is the unusual or unexpected event as defined in Saks and the Hussein case. Tell me what the accident was that wasn't the needle prick. The failure by Etihad to inspect and properly clean the aircraft. That is the accident. That's not an accident in the sense that it caused anything. Don't you need an injury? Your Honor, if it caused the needle to be left in that seatback pocket, then it constitutes an unusual and unexpected event, as in Saks, also as in Hussein, which says an omission can constitute an accident. And as in Hussein, the Supreme Court stated that the omission, the lack or the failure by Olympic Airways to reseat Dr. Hansen was the accident. So the accident has its own unique usage under Article 17. And the accident, again, just needs to be an event external to the passenger, an unexpected happening or occurrence. It's very broadly construed. Again, Hussein, the Olympic Airways versus Hussein case, the court expressly says that it could be broadly interpreted. So then we turn to the bodily injury. And this is what makes this case rather unique because we don't have, as Your Honor pointed out, we don't have a typical airplane crash where we can say that the mental damages are from the crash itself versus the physical injuries that the plaintiff sustained. But what we have here are the physical injuries and those mental damages that flow from those. Do you have any authority that suggests, in order to separate out accident and bodily injury, that failure to clean an airplane is the accident and then there's a separate injury occurring by virtue of the needle prick? It would be the Hussein case. It would be Saks. In Saks, the court dealt with the issue of the, and I can give the court the site, it's 470 U.S. 392. An accident is an unusual or unexpected event external to the passengers. In that case, the court looked at the passenger's internal reaction to the usual, normal, or expected operation of the aircraft. In that situation, the plaintiff had an ear problem during a normal, I think it was a descent. And the court held that there was no recovery because there was nothing unusual or unexpected regarding that descent. In Olympic Airways, the issue was whether an omission, or at least one of the issues, was whether an omission, and Olympic Airways is 540 U.S. 644, and whether that omission can constitute an unusual or unexpected event. The Montreal Convention is, again, a liberally interpreted treaty, but the negligent standard... This is all just generalities. My question is, do you have a case that says something akin to not cleaning an airplane is an accident? Saks and Hussein, Your Honor. And what was the event in that case that you're analogizing to not cleaning an airplane? In the Hussein case, Your Honor, the event was the failure to reseat Mr. Hussein in an available empty seat. And this goes back to when airlines allowed smoking on the aircraft. And they said that was an accident. And they said that was an accident because there were seats available, other seats available. Okay, counsel, I guess I thought that what the court ruled against you on below was not that there wasn't an accident and that the accident didn't cause a bodily injury, but that her mental distress damages, which is what we're mostly fighting about here, I thought, did not flow from the bodily injury. Correct me if that's the wrong decision below, but that was what I thought we were mostly arguing about. No, that appears to be the... damages, and they want to say, no, no, the mental injury is solely from the accident and, therefore, you don't get the connection. You know, it's like the plane that doesn't crash. Correct, Your Honor. And, again, where the district court, we believe, conflated those issues, and, again, Etiade, in its brief, they use the phrase nature of the accident. So Etiade itself makes the argument that the nature of the accident, not the injury, caused Mrs. Doe's mental damages. We submit that, given this unique factual circumstance, the needle stick itself, that those mental injuries don't flow from the accident, which is the unexpected or unusual event of Etiade failing to clean its aircraft, but flow from the needle stick puncture itself. It's an immediate, it's visceral, it certainly is a bodily injury. There was blood. There's evidence in the record that there was a blood as a result of the puncture. Mrs. Doe incurred medical treatment damages. You started out, and just before we diverted onto the accident, I heard you say about that these were caused by, and it sounded like you were accepting standard causation as the standard, whereas Article 17 says sustained in case of death or bodily injury. Are you agreeing that you need direct causation from the accident, or is in case of a different wording and a different standard? We would agree with what the court in the Second Circuit Court of Appeals in Ehrlich said, and supported by the amicus brief that was submitted by the U.S. government and submitted and made part of that decision, that the mental injuries that flow from or are caused by, I think those terms are fairly synonymous, flow from or are caused by the bodily injury are compensable under the Montreal Treaty. The decisions that the court cited below, the district court below, the Jack decision, Jack TWA versus Jack, as well as the case in Little Rock, in Ray Little Rock, Arkansas, while personally they are more of the restrictive approach, this injury falls within the realm of that causation. In other words, the needle stick injury caused both the mental anguish, the shock, the humiliation, as well as the fear of contracting HIV. Those cases that you just mentioned, they were under the earlier convention, the Warsaw Convention, weren't they? They were, Your Honor. And the question, of course, is where do we go, what does Montreal say about that? And while the Second Circuit didn't have that directly in front of it in Ehrlich, the Second Circuit has a very considered, well-considered opinion, and stated that there's really not a change or no change in the causation standard there. With regard to the law of damages in this case, I would like to state that we think that while Michigan likely does provide the law regarding damages, under Sixth Circuit precedent, specifically in Bickle, this case, which is not a diversity case, it's under the 28 U.S.C. 1331 Treaty Obligation of the United States, the court may be required to do a choice of law analysis. The Zickerman decision and its progeny, the Tseng decision, L.L. versus Tseng, while both point to local law of damages as far as compensation, do not exclude or do not directly conflict with Bickle. I see my time is almost up. If the court has any questions. Anything else? When you're listening to the other argument, could you go ahead through your brief, and then when you come back, tell me where you argued anywhere that the failure to clean the airplane is an accident? Okay. Other issues, Judge Sirhenridge? Thank you. You'll have your time for rebuttal. Thank you. Good morning, Your Honors. My name is Andrew Hericus, and I represent Etihad. Good to be back here. It's been a long time since I was here. Listening to Mr. Schwartz's argument, he brings up a number of cases that I'm somewhat familiar with. You know, the Hussein case, the Bickle case. And with respect to the issue of an accident here, I think when you look to the cases of In re Little Rock, the Longo case, the Second Circuit decision in Ehrlich, you see where the court makes the distinction between you have what is the accident, what is the bodily injury, and what flows from it. And what the court here looked at is you have the needle stick case here, and that causes a bodily injury. And then he separates it out, as these courts did, to see what is the mental anguish that flows from it. And they said that in the bodily injury case here, that you don't get the mental anguish flowing from the nature of the accident here, the needle stick, because that's purely mental anguish damages. Here, you get the physical pain and suffering, things that naturally flow from the bodily injury itself. For example, if you had, in this case, if the passenger... From your side, you're agreeing that there was an accident, there was a bodily injury. Correct. Are you arguing there are two separate and distinct things, the accident and the injury? Well, there's the accident, which has to cause a bodily injury. What do you say the accident was? Here, the incident involving the needle stick was the unusual, unexpected event. So then, under your theory, are the accident and the bodily injury one and the same? The accident and bodily injury, they would be two separate events. It's how you... Because in an accident case, in a typical accident case, they're more separated. Here, they're more closely aligned. Tell me what the two separate things are, closely aligned or not. Okay, the two separate things are the appellant claims that Etihad failed to clean the aircraft, thereby leaving the needle in the seatback pocket. So you agree that failure to clean was an accident? Failure to clean was one of the causal links in the chain of causation. I thought the stick was the accident. Well, that's what I'm saying. And then, at the end, when she reaches into it, the unusual, unexpected event is finding it in there and being stuck is the accident. How, then, is the accident, being stuck, different than the bodily injury, which was being stuck? Well, how it's different is that that unusual, unexpected event itself caused the bodily injury. And you have to see, in this case, it's a subtle distinction. But when you look to see what are the damages flowing from it, if she just, let's say, stuck her hand in and there was a screw in the seatback pocket and was stuck by it, the mental anguish damage she would recover would be the physical pain and suffering and anything associated with the regular just being stuck by the screw itself. You said, what difference is there between the accident and the bodily injury? They both seem to be the needle prick. Well, it's the needle prick itself, but it's the nature of the event that caused the injury here. That she's claiming, if she was stuck by, let's just say, the little screw, this fear of contracting AIDS or any type of other disease wouldn't exist. It's just because of the nature of the event, and it has nothing to do with just being pricked by the needle. It doesn't arise out of just being stuck by the needle. But if the accident, so you're saying, well, if she was stuck by a screw, she wouldn't have had this fear, but she was stuck by a needle. But the needle was what was there. That was the thing that happened, right? I mean, we were making up all sorts of analogies. The overhead bin breaks and something falls out, and if it hits your arm, I'm just hurt. If it hits my eye and I fear losing my eye, that flows from it, isn't it? It's not their fault that it hit the needle. It was a needle, not a screw. I would say on the mental injury aspect, when you're looking at what flows from it in that situation, let's say the overhead bin case, the overhead bin opening up and hitting you is the accident. Right. And then the bodily injury is that your eye is damaged. That's pain. But then you fear for a year that the docs say I may have to take the eye out. Okay? Well, that's my analogy here. Doesn't it flow? It is in case of. The mantra, the old convention term is in case of. So doesn't it flow naturally from here, just like the fear does? Well, in that situation, when you have the itself, it's not a you have the fear of that you may end up losing your eye, but that fear directly flows from the person, the injury itself, where in this case here, the needle stick itself, it's more of an amorphous concept that this fear of contracting some type of disease, which the disease is not inherent or related to the bodily injury itself. You got it. 50 years ago, but here today, people are concerned about AIDS and the use of needles. And so doesn't that, doesn't the injury encompass this kind of? No, Your Honor, because the thing is 50 years ago, like you said, you know, it was you had that more strict distinction, line drawing with respect to bodily injury and personal injury. But in this situation, especially in the context of this case, you also, you know, I don't want to get into it, but you have to see here is AIDS, the medical science, everything related to AIDS has changed over the years, going from, let's say, 10 years, 15 years ago to today. At least the physician kept examining her for a year, so he must have been concerned, too. Well, he wasn't an expert in the area, but the medical science shows there was a zero chance of infection in this case. In fact, our expert characterized it as a non-exposure case. The AIDS virus cannot survive outside the body for a matter of minutes and then becomes completely non-infectious. Are there some sort of trial issues here? Yeah, I don't want to get into it. No, but what I mean is that if you're at that level, he has the right to go forward to it. You know, I don't want to get into it. That's why I wanted to avoid that. I'm sorry. Okay. If this does get remanded back, you would still be arguing that she can't prove up on the damages because it wasn't a reasonable fear. Exactly, Your Honor. But that's a different question than can it go forward. Right. That's a different question. But our argument is the issue is here. Let's say you get past the Montreal Convention issue here. Then you go to what damages are recoverable under local law. And under local law here below and as we maintain here, local damage law would be Michigan damage law. And under Michigan damage law, you can't recover for fear of contracting AIDS or contagion unless you show exposure. Isn't that something that should be before the trial court? That's not what the judge here ruled on. Well, he didn't reach the issue. I know. But it is a legal issue. It is a legal issue under Zuckerman and even in Bickel. You're saying this is an alternate theory but in the record but not ruled on below. Exactly. You wouldn't have to worry about that unless you're not right about the Montreal Convention. Exactly. And that's what happened with respect to the Ehrlich case and I believe the Langel case. Those issues, the alternative argument under recoverability of damages under local law were presented, but the court never reached that issue. But look at the one-needle stick case that we do have under the old Warsaw Convention. You have the Tower case. Tower? Tower. Oh, the old Tower airline. Yeah, old Tower. Exactly. We all remember some of these old airlines. In that case there, the court found this very similar analysis. One, it reached with respect to the Warsaw Convention. The court did not find that there was a bodily injury. But then it didn't go into an exhaustive analysis like the Ehrlich case and the Jack case, but it did come down to the conclusion that even if you're setting aside the Warsaw Convention, when you go to local law, in that case Pennsylvania, it did not allow recovery for fear of exposure to contagion. Is that case cited in your brief? Yes, it is, Your Honor. Does it start with Tower? Because I don't see it in the table of authorities under Tower. Is it somebody else versus Tower? Okay, we can look it up. But would you agree that the Montreal Convention terminology and language is different from the Warsaw Convention and that the Montreal Convention was designed to be somewhat more plaintiff-friendly than the Warsaw Convention? The language itself, Article 17, is very similar to the old Warsaw Convention. Similar but not the same. Similar but not the same. The in case of is different, is it not? In case of, but the thing, but the drafters, when they drafted the Montreal Convention, they say in the preamble it's more of a consumer-friendly convention. But what they meant by consumer-friendly was that there would be no issue of willful misconduct anymore. There would be no limits of liability. But the principles of liability remain the same. In fact, the issue of bodily injury was debated during the Montreal Conference. And some people wanted to make specific recognition to mental injury, that you can recover it. Some people wanted to call it personal injury instead of bodily injury. But there could be no consensus could be reached. And the U.S. delegate said at the conference, as well as the transmittal documents, the U.S. Senate would have submitted for advice and consent to ratification, that there's precedent that has been developed over the years with respect to the Montreal-Warsaw Convention, especially with respect to the term bodily injury. And the drafters did not make the change in order to allow this precedent to stand as it's been developed over the years. And the amicus brief submitted by the United States government in the Ehrlich case explains the U.S. government's position that they did not want to make a change from the existing precedent that had been developed under the old Warsaw Convention, including the United States Supreme Court decision of Floyd. Let me go, we've mentioned the Little Rock case, and as I understood it, and tell me if this is a fair representation, that even under the Warsaw Convention, you could recover for emotional damages caused by physical injuries from a plane crash, but not for emotional damages from the plane crash itself. And that's the distinction you're trying to make here. You're trying to take the bodily injury out of the chain of causation, you might say. Yes, but you articulated it much better than I did, Your Honor. But my problem with it is, it seems to me that the nature of the bodily injury is different if you're pricked by a screw than if you're pricked by a needle. So the physical injury is of the, it is what it is. It's a physical fact that it's a syringe which has contained blood. And so if you call that the bodily injury, then the emotional injury follows from it. I think I don't. I mean, it's not just that your skin has been invaded by, you know, something. No, but the thing is, in that case, it does go back to the, when you analogize those other cases of an accident, it goes back to the nature of the accident. And that's what, it's not the fact that she was stuck by a syringe, it's because her fear of contracting AIDS was because of the, well, because of the nature of the event causing the bodily injury. The nature of the accident, it's the physical reality of the accident, of all the concomitants of it. But the thing is here that, you know, superficially I think it does make, you make a very good point and it is appealing. But when you dig down to it, that when you're looking at the issue here, yes, it was a needle stick, but really it's what flows from a bodily injury is the pain itself, what generally flows from such a thing. The fact that it's a needle stick relates to the nature of the event. The fact that she was just stuck by a needle prick itself is not, does not cause fear. It's just because of the nature of the accident, what caused that bodily injury. It's the instrumentality that caused the prick that causes the bodily, causes the emotional damage, right? That's the instrumentality. And that's what I'm saying is the accident itself, the nature of the accident itself.  Yes, Your Honor. That's what caused the mental fear. Oh, Your Honor, I did find it was Rothschild versus Tower. That's why I flipped it around. Right. It's fine. And, but again, but see, that's where I come back to, even if we get past the Montreal Convention argument, I do go back to under Zuckerman and even the Bickel case, what is the local law applicable here? And that's where I think the case, which while the court below did not reach that issue, it is a legal issue is what damages are recoverable. Plaintiff's argument that you can look to federal common law for damages, that's been rejected by, it was rejected by the Supreme Court in Zuckerman, and it made very clear that the court's not going to develop a federal common law of damages under the Montreal Convention. The Second Circuit rejected the exact same argument as well after, in the Pescatore case. So I believe that in this case here, the court did, all these arguments were presented, it did clearly review the precedent and it followed the mainstream approach and found that the needle prick itself did not cause a distress. And, of course, it didn't reach the alternative argument, but we believe that under that ground, the court has the authority to affirm the decision below on that alternative legal ground. So, your honors, if you have no further questions, I won't take up any more of your time. Thank you. Thank you. We have four minutes for rebuttal. Thank you. I'd like to first address Judge McKeague's, your question, as to a reference in any of my briefing in this court as to whether, regarding the cleaning of the aircraft, the omission, the failure to inspect the seatback pocket. It's not directly stated in my briefing. However, it is stated in the complaint at paragraph 24. And we specifically mention at 24A, when defendant Etihad failed to clean the airplane seatback. Pardon me? You've answered the question. Thank you. With respect to the Rothschild case, that case from Pennsylvania is factually, and I think legally, distinguishable. That case arose from a motion for a new trial based on a court's granting of a motion of limine to prevent Mrs. Rothschild from speaking about the fear of contracting HIV. In our case, we have both the fear of contracting HIV as an element of mental damages, as well as the ordinary shock, mortification, loss of ordinary pleasure. I mean, that case I thought was in a sense favorable to you in the sense that they actually got to trial, which is you're not getting to here. And I didn't dig into that case. Was there any medical activity there at all, that is, as opposed to here where you had doctor's care and doctor's bills and so on, or was she just speculating generically? I believe there was one incident of testing that Mrs. Rothschild underwent. And the court there did recognize, unlike the district court below, that the needle stick was, the needle stick itself was the bodily injury. And interestingly enough, the Rothschild case, which is again a case under the Warsaw Convention, you know, stated, specifically cited to the Warsaw Convention's favorability towards the airlines as limiting the recovery under that international treaty. This case obviously is seized under the Montreal Convention. I'd like to address my opposing counsel's statement regarding the accident itself and that definition. He states that the accident was the reaching into the seat back, and then admits that the bodily injury was the needle stick. We submit that it clearly was not, that the fact that the needle was there was the unusual and unexpected event under the Supreme Court's own analysis under Sachs. That means that the fact that it was there, is the accident, only means that how it came to be there, i.e. failure to clean the airplane, is just the background that led to the accident. Under what you're saying now, the accident and the bodily injury are one and the same. The needle is there, although why is a different issue, and it resulted in her being pricked. The needle, Your Honor, the needle, I'm representing that the needle was there because of the omission of Etihad in failing to clean the aircraft. That's how the needle got to be there, but that was... That's the negligence, not the accident. In my luggage falling case, the latch was bad. That's the negligence, but isn't the accident when the luggage falls out and hits you? Under Montreal has, the Montreal Convention has a very unique definition of accident, and that is the unusual or unexpected... And quite rightly so, because the Montreal Convention is a strict liability statute. It says if there is an unusual or unexpected event, which is called an accident in Article 17, and there is a bodily injury taking place on board the aircraft or disembarking or embarking, there is recovery up to 113,000 special drawing rights, at which point you can proceed higher based on basically a negligence standard. Thank you, Your Honor.